UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Joseph Villarreal | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. |
| *versus* | § | 5:22-cv-127 |
| | § | |
| | § | |
| IPAC Pre-Owned Auto, LLC | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

Complaint & Jury Demand

_____

## Introduction

1. This case arises out of a common car dealer scam known as a "yo-yo sale." These fraudulent transactions are so common they are also known by several other names including: spot-delivery, conditional sales, take-back, MacArthur ("I shall return"), or gimme-back transactions.

2. The typical yo-yo transaction involves a consumer who is led to believe that a vehicle's sale is final when they sign a contract and drive off in the car. However, the dealer, without informing the consumer, treats the transaction as conditional. They later demand the return of the vehicle because financing has "fallen through."

3. In cases where the dealer retakes the vehicle, the consumer is left in an unenviable position, no car, no money for a down payment, and no trade-in as it is typically already sold by the dealer. Whether they take the car back or not, the dealer takes advantage of its customer's compromised position to pressure the them into a new, and less favorable agreement.

4. No matter what the dealer says or does, it treats its binding contractual obligations with the consumer as conditional. Conditioned upon the dealer's ability to resell installment agreement on the secondary market at a sufficient markup. Even as it enters into the contract with a consumer and represents that it is selling a car, the dealer knows the sale is conditional, but fails to make the disclosures appropriate for conditional terms of credit.

5. For the purpose of these fraudulent transactions, dealers represent to consumers that the transaction is complete at the time of the transaction. The consumer is provided the vehicle, all necessary paperwork, and all the trappings of ownership:

    a. The fully executed, unconditional, credit agreement;

    b. An agreement that the consumer will obtain insurance; and

    c. A certified application for issuance of title.

6. Plaintiff brings this action for Defendant's violation of the Truth in Lending Act, Equal Credit Opportunity Act, and breach of contract, and seeks actual damages, statutory damages, attorney's fees, and costs.

## Jurisdiction & Venue

7. Jurisdiction of this Court arises under 28 U.S.C. § 1331.

8. Supplemental jurisdiction for Plaintiff's state law claims arises under 15 U.S.C. § 1367.

9. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

## Parties

10. Plaintiff, Joseph Villarreal, is a natural person who resides in and has resided in San Antonio, Bexar County, Texas at all times relevant to this action.

11. Defendant, IPAC Pre-Owned Auto, LLC, is a Texas limited liability company whose mailing address is 4114 Pond Hill Rd, Suite 302, San

Antonio, Texas 78231. It may be served via Roger Benson, its registered agent at 16003 Via Shavano, San Antonio, Texas 78249.

Facts

12. IPAC is a used car dealer.

13. It possesses dealer license number P137894 issued by the Texas Department of Motor Vehicles.

14. At all times relevant hereto, in the ordinary course of its business, IPAC regularly extends or offers to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, making it a creditor within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(f) and Regulation Z at 12 C.F.R. § 1026.2(17).

15. On November 24, 2021 Villarreal and his mother visited IPAC in order to purchase a used car.

16. The vehicle was intended to be for Villarreal's personal and volunteer use.

17. They found a 2016 Ford F-150 that fit his needs. The payments, based on IPAC's representations, were within his budget.

18. As part of a set of several documents they executed that day, they both executed a retail installment sales contract (the "RISC").

19. The RISC named Villarreal as the "co-buyer" and his mother Elain Francesco as the "buyer."

20. It names Defendant IPAC as the "seller/creditor."

21. The RISC contains disclosures required by the Truth in Lending Act. They include the annual percentage rate, finance charge, and the payment schedule.

22. IPAC also included a conditional delivery agreement in this paperwork.

23. Texas law allows a conditional delivery agreement. See Tex. Fin. Code. § 348.013.

24. However, a conditional delivery agreement is void upon execution of a retail installment contract. Tex. Fin. Code § 348.013(c)(2).

25. Villarreal enjoyed the use of the F-150. Outside of his personal use, he used the F-150 for his volunteer efforts with the Bexar Search and Rescue organization.

26. On or about December 20, IPAC told Villarreal that the financing had fallen through—the bank had not approved of the note—and he now had to sign a new retail installment sales contract or lose the truck.

27. The new RISC had different financing, less favorable terms—a higher interest rate and higher payments.

28. In need of the vehicle, Villarreal signed the new RISC.

29. Villarreal never received a copy of the second RISC.

30. Per the terms of the first RISC Villarreal's first payment was due January 8, 2022.

31. On January 7, 2022 IPAC had no right of possession superior to Villarreal's.

32. On January 7, before Villarreal's first payment was due, and after IPAC was unable to assign the second RISC at terms favorable enough to IPAC, it repossessed the truck from Villarreal.

33. This time it did not offer another agreement or to refund his down payment.

34. This left Villarreal without a vehicle.

First Cause of Action – Truth In Lending Act

35. Plaintiff incorporates by reference all preceding paragraphs of this Complain as though fully stated herein.

36. The Truth in Lending Act disclosure requirements apply to closed ended consumer-credit transactions. 15 U.S.C. § 1631.

37. TILA directs the CFPB, via regulation, to implement the specifics of the Act. 15 U.S.C. § 1632. *Houston v. Tex. Auto Save, LLC*, Civil Action No. SA-19-CA-1018-XR, 2020 U.S. Dist. LEXIS 17285 (W.D. Tex. 2020) ("The Consumer Financial Protection Bureau is the agency charged with interpreting TILA and promulgating rules to effectuate its purposes.")

38. IPAC is a creditor within the meaning of the Truth in Lending Act, 15 U.S.C. § 1602(f) and Regulation Z at 12 C.F.R. § 1026.2(17).

39. This view—that the dealer is a creditor—is foreign to most dealers' sales departments but is promulgated by Regulation Z and long accepted in the 5th Circuit. In *Riviere v. Banner Chevrolet*, 184 F.3d 457 (5th Cir. 1999) the 5th Circuit, referring to 12 CFR § 1026.2 comment 2(a)(17)(i), held that "even where obligation is

simultaneously assigned to another, automobile dealer is [the] creditor if [the] obligation is initially payable on its face to [the] automobile dealer." [internal quotation marks omitted]

40. Retail installment sales contracts (RISCs) are consumer credit sales as defined by the Truth in Lending Act 15 U.S.C. § 1602(h) and Regulation Z at 12 C.F.R. § 1026.2(a)(16).

41. Regulation Z at 12 CFR § 1026.17(b) requires a creditor to make disclosures before the consummation of a credit transaction.

42. Here, IPAC failed to make the required disclosures of the true interest rate of the transaction before it was consummated. In November, it provided a RISC with disclosures before forcing Villarreal in December to sign a second RISC with different terms.

43. IPAC violated TILA and Regulation Z at 1026.17(c)(2) because it treated the disclosures on the first RISC as estimates about the terms of the credit that it might provide Plaintiffs, and failed to mark them as estimates.

44. In further violation IPAC failed to provide the terms of the second RISC to Villarreal in a form that he could keep as required by 15

U.S.C. § 1638(b)(1) and Regulation Z, 12 C.F.R. §§ 1026.17(a) and (b).

45. It further violated TILA in that it:

   a. failed to disclose accurately the "finance charge," in violation of 15 U.S.C. § 1638(a)(3), and Regulation Z, 12 C.F.R. § 1026.18(d) and 1026.4; and

   b. failed to disclose accurately the "annual percentage rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, 12 C.F.R. § 1026.18(e).

## Second Cause of Action – Equal Credit Opportunity Act

46. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully stated herein.

47. IPAC is a creditor as defined by the ECOA at 15 U.S.C. § 1691a(e).

48. IPAC participates in credit decisions in relation to its RISCs.

49. Following the receipt Villarreal's credit application IPAC was required to make a credit decision within 30 days.

50. Based on that credit application IPAC granted credit to Villarreal; alternatively, IPAC intended to treat the RISC as conditional and ultimately denied credit to Villarreal.

51. After granting credit, IPAC revoked credit; alternatively, IPAC denied credit.

52. That revocation of credit constituted an adverse action for purposes of the ECOA; alternatively, that denial of credit constituted an adverse action. See 15 U.S.C. 1691(d)(6).

53. The ECOA requires a creditor, within 30 days of taking an adverse action to notify a credit applicant of the specific reason for said adverse action. 15 U.S.C. §§ 1691(d)(1), (2), and (3).

54. Upon information and belief, IPAC has no policies or procedures in place to comply with the ECOA's adverse action notice.

55. IPAC failed to send the notice contemplated by the ECOA.

56. This failure to issue an adverse action notice constitutes a negligent violation of the ECOA, 15 U.S.C. § 1691 by IPAC.

### Third Cause of Action – Breach of Contract

57. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as though fully stated herein.

58. The Texas Finance Code makes conditioning the sale of a vehicle on the subsequent assignment of the contract to a holder illegal. Tex. Fin. Code § 348.1015.

59. IPAC induced Villarreal to enter into a final binding contract even though it knew that it was conditional upon the subsequent assignment.

60. Here, IPAC, was unsatisfied with the terms of the subsequent assignment so it unilaterally breached the contract.

61. First, it rewrote the contract in the form of the second RISC.

62. Then when the new terms still did not get it favorable enough terms it unilaterally breached that contract and repossessed the truck, before the first payment was due.

63. IPAC's breach caused Villarreal to lose the use and enjoyment of the truck.

## Jury Demand

64. Plaintiff demands this case be tried before a jury.

## Prayer for Relief

Plaintiff requests this Court grant him the following relief:

a. Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment;
b. Award statutory and punitive damages; and
c. Award statutory costs and attorney's fees.

Respectfully submitted,

/s/William M. Clanton
William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
210 226 0800
210 338 8660 fax
bill@clantonlawoffice.com
Plaintiff's Counsel